SUPERI... ...URT
OF ...UAM

2018 JAN 12 PM 4: 20

CLERK OF COURT
BY:

# IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| ANGELO S. BUENO, JR., | ) | DOMESTIC CASE NO. DM0325-15 |
| PLAINTIFF, | ) | |
| | ) | FINDINGS OF FACT AND |
| vs. | ) | CONCLUSIONS OF LAW RE: |
| | ) | COMPLAINT FOR DIVORCE & |
| MICHELE R.L. BUENO, | ) | SPOUSAL SUPPORT |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## INTRODUCTION

This matter came before the Honorable Maria T. Cenzon for a bench trial on July 28, 2017. Attorney Daniel Somerfleck represented Plaintiff Angelo Bueno ("Plaintiff"). Attorney Jeffrey Cook represented Defendant Michele Bueno ("Defendant").

At the bench trial, the Court received testimony, on both direct and cross examination, from the Parties, Plaintiff's Mother Rosario Bueno ("Rosario"), and Defendant's Mother Joyce Martratt ("Martratt"), as witnesses. With the submission of both Plaintiff's [proposed] Findings of Facts and Conclusions of Law (Sep. 15, 2017) and Defendant's [proposed] Findings of Fact and Conclusions of law (Sep. 15, 2017), the Court took the matter under advisement. After reviewing the evidence presented, the record and pleadings in this matter, and the relevant law, the Court now issues these Findings of Fact and Conclusions of Law ("FFCL").

//

//

## FINDINGS OF FACT

1. The Parties were married on February 14, 1997. This marriage is the Parties' second marriage to each other. The first marriage lasted from 1988 to 1995. The first marriage was dissolved and they remarried in 1997.

2. Throughout the parties' marriage, their primary residence was in a home owned by Rosario in Dededo, Guam.

3. The Parties separated on or about November 1, 2014. After their separation, Plaintiff moved in with Ms. Lillian Perez and continues to live with her. Defendant continued to reside in the marital residence with Rosario and received $300 per month of support from Plaintiff. In June 2015, Defendant moved in with family members and Plaintiff's support payments ended.

4. Plaintiff filed a Complaint for Divorce on July 2, 2015 citing "irreconcilable differences" as the basis for divorce.

5. Defendant filed an answer to the Complaint and a counterclaim for Separate Maintenance on July 31, 2017. Defendant sought legal separation because she would like to remain as a beneficiary under Plaintiff's health insurance. Defendant also requests for permanent spousal support.

6. There are no children of the marriage.

7. Both parties were unfaithful during the marriage and were involved in a series of affairs. Plaintiff testified that since the second marriage he was involved with three affairs. Defendant was accused of two affairs, but only admitted to one affair in 1998.

However, the latest affair was by Plaintiff with Lillian Perez which commenced in 2013.

8. Plaintiff has a land trust property in Yigo, acquired before the marriage. Both parties agree that this property is Plaintiff's separate property.

9. The community property of the parties includes:

   a) 2002 Mazda Protege,

   b) 2013 Toyota Tacoma, and

   c) Plaintiff's Government of Guam retirement benefits accumulated during the parties' marriage totaling to an estimated $73,367.93 (in regular retirement) and $3,166 (in supplemental retirement).[1]

10. The Community debts of the parties consist of the following:

    a) Loan with First Hawaiian Bank for the 2013 Toyota Tacoma,

    b) Guam Memorial Hospital debts, and

    c) Citibank Visa credit card debt.

11. Plaintiff was the primary provider during the marriage and was in control of all finances. Defendant only worked sporadically during the marriage. Plaintiff provided financial support and contributed to most of the house chores, such as cleaning, laundry, and cooking. Defendant also assisted in some dusting, laundry with plaintiff, and kept her mother-in-law, Plaintiff's mother, company.

12. Defendant suffers from Myotomic Muscular Dystophy which disables Defendant from seeking employment. It is a hereditary disability causing generalized muscle pain and

---

[1] Amount must be verified by the Government of Guam Retirement Fund.

weakness. Although Defendant was diagnosed in 2015, she suffered from its symptoms years before her diagnosis. Plaintiff agreed to take care of Defendant even though he knew of her possible condition. According to Defendant, Plaintiff was made aware of this diagnosis because Defendant's father suffered from the same disability.

13. Pending resolution of the instant action, Defendant filed a Motion for Temporary Spousal Support and Attorney's Fees on August 31, 2015. The Court issued a Finding of Fact and Conclusion of Law following the Evidentiary Hearing on Defendant's Motion for Temporary Spousal Support and Attorney's Fees awarding payment of $800 in temporary spousal support for Defendant. However, during the trial, Plaintiff testified that he never made payments pursuant to the Court's April 26, 2016 Order. *See* FFCL Following Evidentiary Hearing (Apr. 26, 2016).

14. Even after the parties' separation, Plaintiff continues to provide medical coverage through his employer's SelectCare 1500 insurance coverage which requires the first $1,500 of medical expenses to be paid prior to the insurance coverage of 80/20 thereafter. Plaintiff stopped coverage of Defendant in October 2016 and it was reinstated in March 2017.

15. Defendant also receives payment of medical services from the Government of Guam, Medicaid program and $49 per month from Welfare benefits.

16. Plaintiff is employed with the Guam Police Department as a police officer. As of April, 2016, Plaintiff earned a base pay of $22.35 per hour. Therefore, Plaintiff's base annual salary is approximately $42, 912.[2]

17. Defendant requests that Plaintiff be ordered to pay reasonable attorney's fees for requiring Defendant to defend and prosecute this litigation. The Court conditionally allocated $300 per month towards Attorney's Fees, until the fees are fully paid, unless and until Defendant's attorney submits itemized involves and detailed charges are deemed reasonable. *See* FFCL Following Evidentiary Hearing (Apr. 26, 2016).

18. No reconciliation is possible between the parties.

## CONCLUSION OF LAW

### I. GROUNDS FOR DISSOLUTION

1. Irreconcilable differences are those grounds which are determined by the Court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved. 19 GCA § 8219.

2. If the statutory requirements for granting dissolution of the marriage are satisfied, the trial court does not have discretion on whether or not to grant the dissolution of the marital relationship. *Speicher v. Speicher,* 2013 Guam 11, ¶ 20.

3. Dissolution of marriage must be denied upon showing recrimination. 19 GCA § 8301(d).

4. Recrimination is a showing by the defendant of any cause of dissolution of marriage against the plaintiff, *in bar of the plaintiff's cause of dissolution of marriage. Id.* §

---

[2] Defendant also receives other compensation with his employment, such as overtime, for example in 2014 and 2015, Defendant's reported wages were $73,310.83 and $74,045.97, respectively.

8312. (emphasis added). Defendant argues that Plaintiff's complaint for dissolution of marriage should be denied because of the doctrine of recrimination, specifically, based on her ability to prove Plaintiff committed adultery.

5. Dissolution of marriage must be denied "[w]hen the cause is adultery and the action is not commenced within two (2) years after the commission of the act of adultery, or after its discovery by the injured party...." *Id.* § 8314(a). Adultery is defined as the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife. *Id.* § 8204.

6. Sections 8301 and 8312 are identical to California Civil Code Sections 111 and 122, until California repealed their statutes in 1969. The Guam Supreme Court consistently holds that in such situations, the Court should look to California case law for interpretation. *People v. Angoco*, 2007 Guam 1. California cases subsequent to the adoption of the Guam codes, while not binding, are persuasive. *Tabor v. Ulloa*, 323 F. 2d 823, 824 n. 5 (9th Cir. 1963).

7. Similar to the doctrine of unclean hands, the doctrine of recrimination "is neither puristic nor mechanical, but an *equitable* principle to be applied according to the circumstances of each case and with a proper respect for the paramount interests of the community at large." *De Burgh v. De Burgh*, 39 Cal. 2d 858, 870 (1952) (emphasis added).

8. The Court is convinced that the doctrine of recrimination is triggered by the facts of this case; however, whether application is proper is analyzed, below. Defendant demonstrated Plaintiff committed adultery through witness testimony, particularly

through Plaintiff's own admission that he sought intimacy with someone else, namely Lillian Perez.

9. "To decide the issue raised by a plea of recrimination, the court must consider the prospects of reconciliation, the comparative fault of the plaintiff and the defendant, and the effect of the marital strife upon the parties, their children, and the community." *De Burgh,* 39 Cal. 2d at 873. In this case, the Court finds there are no prospects of reconciliation. As to the comparative faults of the parties, this factor heavily weighs against the Plaintiff, particularly in that he was not faithful to Defendant, especially prior to their separation. Lastly, the Court is convinced that continuation of the marriage would constitute serious hazard to the mental and physical health of both parties. Plaintiff testified that he has physically abused Defendant during their marriage. Defendant added that Plaintiff would often yell at her for the debts the couple incurred as a result of her medical condition.

10. The Court, moreover, is concerned with the "social considerations which make it contrary to public to policy to insist on the maintenance of a union which has utterly broken down." *De Burgh,* 39 Cal. 2d at 864 (citing *Hill v. Hill,* 23 Cal.2d. 82, 93 (1974); *Weil v. Weil,* 37 Cal.2d. 770, 783-784 (1951)). Further, the Court finds that it would be "a degradation of marriage and frustration of its purpose" for this Court to deny a dissolution of the marriage where the marriage is so clearly "irretrievably wrecked." *Barton v. Barton,* 230 Cal. App. 2d 43, 48 (1964) (quoting *De Burgh* 39 Cal. 2d at 864). As held in *Barton,* a finding of adultery on the part of the husband does not justify denying him a divorce where there was blame on both sides in that the wife

often refused marital relations and repeatedly berated the husband as being an unfit husband and an immoral person. *Id.*

11. Plaintiff testified no reconciliation is possible between the parties and that he has not been intimate with his wife since 2001. Plaintiff also testified that Defendant's medical condition and inability to work has been a constant basis for disagreements. In addition, Plaintiff complained that he was "tired of doing everything." Defendant also testified that Plaintiff was involved in a series of affairs, "one girl after another." Defendant stated that Plaintiff was not discreet about his affair, for example, Plaintiff would inform Defendant when he would spend the night with other people or require that Defendant step outside of the couple's room or vehicle when he is on the phone with another woman.

12. Accordingly, based on the evidence and witness testimonies, the Court hereby finds that the dissolution of the marriage based upon Plaintiff's adultery is warranted.

## II. COMMUNITY PROPERTY, SEPARATE PROPERTY, AND DEBT

1. Guam law requires "the community property... shall be assigned as follows ... [i]f the decree be rendered *on the ground of adultery or extreme cruelty,* the community property shall be assigned to respective parties in such proportions as the court, from all the facts in the case, and the condition of the parties, *may deem just.*" 19 GCA § 8411(a) (emphasis added).

2. Separate property is defined as "property acquired by either spouse before marriage or after entry of a decree of dissolution of marriage." *Id.* at § 6101 (a)(1).

3. Plaintiff is **awarded** as his sole and separate property the land trust property located in Yigo acquired before marriage.

4. The court **awards** each party one-half of the value of Plaintiff's retirement plan accumulated from the date of the parties marriage to the date of separation in November, 2014 or one-half of $73,367.93 (in regular retirement) and $3,166 (in supplemental retirement), subject to final verification by the Government of Guam Retirement Fund.

5. The Court **further awards** the Mazda Protege to the Defendant and the Toyota Tacoma to the Plaintiff, as it is currently divided.

6. The Court **orders** Plaintiff to assume responsibility for the automobile loans with First Hawaiian Bank for the Toyota Tacoma, Citibank Visa credit card debt, and the Guam Memorial Hospital debt.

## III. SPOUSAL SUPPORT

1. "When an action for dissolution of marriage is pending, the court may, in its discretion, require the husband or wife, as the case may be, to pay as alimony any money necessary to enable the wife, or husband, to support herself … or himself." 19 GCA § 8402.

2. The language in Section 8402 was interpreted by the Guam Supreme Court in *Cruz v. Cruz,* 2005 Guam 3. Specifically, the Guam Supreme court opined "[w]hat is 'necessary' rests in the sound discretion of the trial court .... to be exercised in view of the circumstances of the parties, their several necessities, and the pecuniary ability of the husband." *Cruz v. Cruz,* 2005 Guam 3, ¶ 10 (citations omitted). Some factors the

trial court may consider include "the parties' standard of living, the length of marriage, and the age, education, and ability of both parties." *Jung Ye Kang v. Byong Hi Kang*, 2014 Guam 25, ¶ 20.

3. The parties were married for over seventeen (17) years. During their marriage Defendant only worked sporadically, totaling less than three (3) of the seventeen (17) years. Plaintiff controlled the couple's finances and would occasionally give Defendant spending money.

4. Defendant is disabled due to a permanent medical condition, Myotomic Muscular Dystrophy and is unable to work. Defendant currently relies on familial support, primarily from Martratt, to survive. Defendant resides with her sibling, but has applied for housing assistance under GHURA. If approved, Defendant would be required to pay about 30% of the rent required, roughly $200 or $300 per month. If removed as a beneficiary of Plaintiff's insurance, Defendant would be required to make higher payments for medical services and, presumably, insurance.

5. Plaintiff is employed with the Guam Police Department. Plaintiff resides with his girlfriend, Ms. Perez, his mother, his sister, and sister's two children.

6. Based on the evidence provided, the Court finds that Defendant is entitled to permanent spousal support and that Plaintiff is capable of making such payments.

7. The reasonable amount for spousal support has been previously discussed by this Court in its FFCL Following Evidentiary Hearing (Apr. 26, 2016). The court's findings remain valid and are incorporated herein by reference. As previously held, the Court finds $800 per month for spousal support reasonable.

## IV. ATTORNEY'S FEES

1. "When an action for dissolution of marriage is pending, the court may, in its discretion, require the husband or wife, as the case may be, to pay as alimony any money necessary to enable the wife, or husband, to ... prosecute or defend the action." 19 GCA § 8402.

2. The Guam Supreme Court in *Cruz v. Cruz*, 2005 Guam 3, held that the trial court did not err in awarding attorney's fees "where its decision was justified by the evidence and reached upon by weighing relevant facts." ¶ 16. The court found that presentation of the following evidence supported the trial court's decision: evidence of the abilities of the parties to pay, the required party was the sole source of financial income during the marriage, and financial abilities of the parties post-divorce. 2005 Guam 3, ¶¶ 14-16.

3. The court also found that "[n]ecessity may be proved only by showing that her need for proper support and the expenses of the litigation exceed her available resources. This means that the ... judge must be informed in detail not only as to her needs, but also her resources." *Id.* (citations omitted).

4. Similarly, Plaintiff was the sole provider and handled all of the finances throughout the parties' marriage. Moreover, Defendant is disabled and unable to work due to her permanent medical condition and would have to rely on public assistance and familial support to survive. Defendant testified that she barely had economic resources during the marriage and is left with even less now, post-separation. Accordingly, the Court is convinced that Plaintiff should be required to pay the associated legal fees and costs to enable Defendant to defend this action.

5. As previously held, the Court will not make final order of approved payments until Defendant's attorney submits itemized invoices and the detailed charges are deemed reasonable by the Court. Approved amounts shall be paid at the rate of $300 per month until fully paid by Plaintiff.

## ORDER

Based on the above findings and conclusions, the Court hereby orders the following:

1. The Court ORDERS the dissolution of the parties' marriage on the grounds of the Plaintiff's adultery.

2. The Court AWARDS the following regarding community property, separate property and debt:

   a. Plaintiff is **awarded** land trust property in Yigo as his sole and separate property.

   b. Each party is **awarded** one-half (½) of Plaintiff's retirement accumulated during the marriage or one-half of $73,367.93 (in regular retirement) and $3,166 (in supplemental retirement), subject to final verification of amounts by the Government of Guam Retirement Fund.

   c. Mazda Protégé **awarded** to the Defendant and the Toyota Tacoma to the Plaintiff.

   d. The Court **orders** Plaintiff to assume responsibility for the automobile loans with First Hawaiian Bank for the Toyota Tacoma, Citibank Visa credit card debt, and the Guam Memorial Hospital debt.

3. The Court ORDERS payment of <u>eight hundred dollars ($800) per month to Defendant</u> for permanent spousal support effective from the date of the issuance of this FFCL.

4. The Court ORDERS Plaintiff to pay the expenses of Defendant's attorney's fees, subject to the submission of a Bill of Costs to the Court and further order reducing fees and costs to a sum certain.

  a. Defendant's attorney shall submit a Bill of Costs and itemized statement to the Court <u>within thirty (30) days</u> of the issuance of these FFCL.

5. The Court finds that the Plaintiff willfully failed to pay Defendant spousal support pursuant to the April 26, 2016 order, or any part thereof. The Court will allow Plaintiff to avoid punishment for his contemptuous behavior by paying an extra $200 per month toward the spousal support arrears of $22,400.[3]

Judgment shall follow separately, incorporating the Orders set forth herein.

**SO ORDERED** this 12th day of <u>January, 2018.</u>

SERVICE VIA COURT bOX

I acknowledge that a copy   the
original here. was placed in the
court box of:
J. COOK
D. Sonnefleck
Date: 1 12 18 Time: 4:30

Deputy Clerk Superior Court of Guam

**HONORABLE MARIA T. CENZON**
JUDGE, SUPERIOR COURT OF GUAM

---

[3]The FFCL Following Evidentiary Hearing issued by this Court ordered payments of temporary spousal support *nunc pro tunc* to August 31, 2015. $800 x 28 months (August 2015 – December 2017).